IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No.: 3:24-cv-00900

| | | |
|---|---|---|
| DANIELLE RUIZ, JANET GUZMAN, KEELEY REBECCA HAZELL, MARIANA DAVALOS, ROSA ACOSTA, STEPHANIE RAO, PAOLA CAÑAS, and JAMILLETTE GAXIOLA, | ) ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) ) | **COMPLAINT** |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| | ) | |
| QC PRESS CLUB, LLC. d/b/a BROOKLYN NIGHTCLUB AND LOUNGE and KIMBERLY N. DOLLAR, | ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

Plaintiffs Danielle Ruiz, Janet Guzman, Keeley Rebecca Hazell, Mariana Davalos, Rosa Acosta, Stephanie Rao, Paola Cañas, and Jamillette Gaxiola (collectively, "Plaintiffs"), file this Complaint against QC Press Club, LLC. d/b/a Brooklyn Nightclub and Lounge and Kimberly N. Dollar, (collectively "Defendants"), and respectfully allege as follows:

<u>BACKGROUND</u>

1.      This is an action for damages and injunctive relief relating to Defendants' misappropriation, alteration, and unauthorized publication and use in advertising of Images of Plaintiffs, each of whom are well-known professional models, to promote their night club, Brooklyn Nightclub and Lounge located in Charlotte, North Carolina ("Brooklyn" or the "Club").

2.      As detailed below, Defendants' misappropriation and unauthorized use of Plaintiffs' Images, photos and likenesses (collectively, "Images") constitutes: a) violation of section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1), which prohibits both false or misleading

- 1 -

representations of fact in commercial advertising and the false or misleading use of a person's image for commercial purposes; b) violation of each Plaintiffs' common law right of privacy - misappropriation; c) violation of North Carolina's Unfair & Deceptive Trade Practices Act, N.C. Gen. Stat § 75-1.1 *et seq.*; and d) various common law torts, including conversion.

3. In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using any of their Images in any way and through any medium.

## JURISDICTION & VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 28 U.S.C. § 1125(a)(1).

5. This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6. Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7. According to publicly available records, defendant QC Press Club, LLC. operating under the laws of the state of North Carolina, operates Brooklyn Nightclub and Lounge, which is located at 225 N Caldwell St, Charlotte, North Carolina 28202.

8. According to publicly available records, defendant Kimberly N. Dollar is a Managing Member of QC Press Club, LLC.

9. Venue is proper in the United States District Court for the Western District of North Carolina because Defendants' principal place of business in Charlotte, North Carolina.

10. A significant portion of the alleged causes of action arose and accrued in Charlotte, North Carolina and the center of gravity for a significant portion of all relevant events alleged in

this complaint is predominately located in Charlotte, North Carolina.

## PARTIES

*Plaintiffs*

11.     Plaintiff Danielle Ruiz ("Ruiz") is a well-known professional model, and a resident of Los Angeles County, California.

12.     Plaintiff Janet Guzman ("Guzman") is a well-known professional model, and a resident of Los Angeles County, California.

13.     Plaintiff Keeley Rebecca Hazell ("Hazell") is a well-known professional model, and a resident of Los Angeles County, California.

14.     Plaintiff Mariana Davalos ("Davalos") is a well-known professional model, and a resident of Los Angeles County, California .

15.     Plaintiff Rosa Acosta ("Acosta") is a well-known professional model, and a resident of Los Angeles County, California.

16.     Plaintiff Stephanie Rao ("Rao") is a well-known professional model, and a resident of Los Angeles County, California.

17.     Plaintiff Paola Cañas ("Cañas") is a well-known professional model, and a resident of Miami-Dade County, Florida.

18.     Plaintiff Jamillette Gaxiola ("Gaxiola") is a well-known professional model, and a resident of Clark County, Nevada.

*Defendants*

19.     Defendant QC Press Club, LLC is a limited liability corporation formed under the laws of the state of North Carolina and registered to conduct business in North Carolina. At all times relevant to this action, QC Press Club, LLC operated La Rumba in Charlotte, North Carolina.

- 3 -

20.     Service of process may be perfected upon Defendant QC Press Club, LLC by serving the registered agent for service of process, Kimberly N. Dollar, at 8509 Loxton Circle, Charlotte, North Carolina.

21.     Defendant Kimberly N. Dollar is the Manager of QC Press Club, LLC who himself, upon information and belief, was the natural person who directed, supervised, participated in, and is responsible for the wrongful acts and omissions complained of herein.

22.     Service of process may be perfected upon Kimberly N. Dollar by serving her at 8509 Loxton Circle, Charlotte, North Carolina.

## FACTUAL ALLEGATIONS

23.     Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

24.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

25.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendants to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendants.

26.     In the case of each Plaintiff, this apparent claim was false.

27.     Moreover, this misappropriation occurred without any Plaintiffs' knowledge, consent, or authorization.

- 4 -

28.     No Plaintiff has ever received any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

29.     Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

30.     In other cases, Defendants misappropriated Plaintiffs' Images from other sources through unlawful violation of copyrights and or licenses that were not and never were held by Defendants.

31.     As of the date of this Complaint, Defendants' use of Plaintiffs' images is ongoing and Defendants thus continue to reap the benefit of their alleged association with Plaintiffs, which is of course, false.

*Plaintiffs' Individual Backgrounds and Careers*

32.     Plaintiff Ruiz is a veteran of the entertainment industry and an extremely accomplished, established, and highly sought model, host, and actor. She shot to fame by winning Miss Hawaiian Tropic Brazil and competing worldwide. As a model, she has worked for Foreplay Lingerie, Elegant Moments, Escante Lingerie, Hustler Apparel, Body Zone Apparel, and Ziggy NY Shoes. She was also a contract model for Fredericks of Hollywood and L*Space, also for Rockstar Energy's Miss Motorcross and Monster Energy Dime Squad Girl. She has appeared in many magazines and graced the covers of *Maxim* and *Elegant*. Her career on TV is just as impressive with appearances on *The New Girl*, *The Finder, Breaking In*, *Cougar Town, CSI Entourage, The Jonas Brothers, Miami Trauma, Dark Blue, Love Bites, Friends with Benefits, Battle LA, The Ex's* and hosting the series *WPT Royal Flush*. She has over 182 thousand followers

- 5 -

on Instagram and over 16 thousand followers on Twitter. [1]

33.   That we know of, Ruiz is depicted in the photos in Exhibit "A" to promote Brooklyn on its Facebook page. This Image was intentionally altered to make it appear that Ruiz was either an employee working at Brooklyn, that she endorsed Brooklyn, or that she was otherwise associated or affiliated with Brooklyn.

34.   Ruiz has never been employed at Brooklyn, has never been hired to endorse Brooklyn, has never been otherwise associated or affiliated with Brooklyn, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

35.   Plaintiff Guzman is a social media star who is widely known for her self-titled Instagram page. She has gained popularity there for her modeling and lifestyle photos, surpassing over 2.1 million followers. She's widely known to be Fashion Nova's number 1 featured talent. She mostly promotes the clothes of the Fashion Nova clothing brand on her Instagram and has also appeared on the Fashion Nova Billboard located at Melrose and Fairfax (California). She was featured in an exclusive video interview with Fashion Nova in March of 2022. She has also seen her janetguzman_TikTok channel become widely popular, with her videos on the platform earning over 1.9 million total likes. She also runs a popular OnlyFans subscription account and a travel/lifestyle/fashion vlog on YouTube.

36.   That we know of, Guzman is depicted in the photos in Exhibit "B" to promote Brooklyn on its Facebook page. These Images were intentionally altered to make it appear that Guzman was either an employee working at Brooklyn, that she endorsed Brooklyn, or that she was otherwise associated or affiliated with Brooklyn.

---

[1] In the modeling world and talent industry (in general), the number of online Instagram "followers", X "followers", and or Facebook "likes" is a strong factor in determining a model's earning capacity.

37.     Guzman has never been employed at Brooklyn, has never been hired to endorse Brooklyn, has never been otherwise associated or affiliated with Brooklyn, has received no remuneration for Defendants' unauthorized use of her Images, and has suffered, and will continue to suffer, damages as a result of same.

38.     Plaintiff Hazell is an English model, musician, singer and actress. Hazell became one of Britain's most successful glamour models, working with brands such as *Page 3, FHM, Loaded, Nuts* and *Zoo Weekly*. She has also made numerous television appearances and has appeared in films such as Horrible Bosses 2. At 17, she competed in The Daily Star's "Search for a Beach Babe" contest and won she then went on to study fashion at Lewisham College. She entered The Sun's Page 3 Idol competition and was chosen as winner of £10,000 worth of "sexy clothes", "a one-year membership of the Rex cinema and bar", and a one-year exclusive glamour modelling contract with The Sun in December of 2004.Hazell has been regularly featured in Nuts and Zoo. She has been on the cover of The Sun's 2006 and 2007 Page 3 calendars, in addition to her own wall calendars; the 2007 edition selling 30,000 copies in its first few days of release. In June 2005, Hazell appeared on the front cover of Maxim magazine, and on the front cover of FHM in September. In January 2006, she appeared on the front cover of Loaded magazine. In 2007, Hazell and IT expert Gary Schwartz co-presented Byte Me TV, an online program that tried to explain technology in an easy to-understand way. In 2008, Hazell appeared in the BBC Three documentary Page Three Teens. Hazell released a pop music single called "Voyeur" and she along with  agent Ginny Mettrick co-founded modelling agency Muse Management. In 2009, according to the August edition of Loaded, Peta Todd stated that Hazell had given modelling up to pursue a career in acting and that she was in America receiving acting lessons. Her last appearance on Page 3 of The Sun was on 30 September 2009. In 2010, Hazell had her first lead role in the short film

Venus and the Sun, a comedic retelling of Ovid's myth, Venus and Adonis. Hazell had a small role in the film Like Crazy, which won both the Grand and a Special Jury Prize at the 2011 Sundance Film Festival. In 2012, Hazell played a supporting role in the British gangster movie St George's Day, which was directed by Frank Harper. In January 2013, Hazell made another return to modelling by appearing in *FHM*. Hazell was the face of Sony Computer Entertainment Europe's Formula One 06 video game for PlayStation 2, PlayStation Portable, and F1 CE for PlayStation 3. She is currently the face of MotorStorm: Pacific Rift for PlayStation 3. Hazell had a small role in the full-length version of Cashback, playing "Frozen Girl in Sainsbury's". In 2015, Hazell landed a role in E!'s first scripted drama, The Royals, as "Violet". Hazell starred in the 2013 comedy film Awful Nice and the 2015 horror film Whispers. She also appeared in the 2016 short film Queen of Hearts. She appeared in the 2018 TV Movie Vows of Deceit. Hazell was hailed by Conservative leader David Cameron in December 2006 as an "environmental hero" for her campaigns in The Sun, giving environmental tips such as turning lights off during the day. She was named alongside the likes of David Attenborough, Prince Charles, and Arnold Schwarzenegger in the Tories' list. Hazell backed a major breast cancer awareness campaign for Breakthrough Breast Cancer. The campaign, called TALK TLC, aimed to promote Breakthrough's breast health message about the need to be aware of the signs and symptoms of breast cancer. Hazell has also signed up to take part in the Breakthrough Generations Study consisting of 100,000 women and spanning 40 years; the study aims to be the largest and most comprehensive of its kind.

39. That we know of, Hazell is depicted in the photos in Exhibit "C" to promote Brooklyn on its Facebook page. These Images were intentionally altered to make it appear that Hazell was either an employee working at Brooklyn, that she endorsed Brooklyn, or that she was otherwise associated or affiliated with Brooklyn.

40.     Hazell has never been employed at Brooklyn, has never been hired to endorse Brooklyn, has never been otherwise associated or affiliated with Brooklyn, has received no remuneration for Defendants' unauthorized use of her Images, and has suffered, and will continue to suffer, damages as a result of same.

41.     Plaintiff Davalos established a modeling career in Colombia as one of the most famous and successful models in all of Latin America by the age of 18. Davalos was the face of Nacar cosmetics and has appeared in Maxim magazine, Imagen magazine, Besame, SOHO TV, Rumbas de la Ciudad, La Granja Tolima, Kiss Catalogue, Deluxe Jeans, Revista Soho, SCRIBE, Coed People, La Gemela mas Dulce, Para Hombre, Spiritual Jeans and Satori. Davalos is constantly listed in "The top sexiest people in the world" lists and whether solo or teamed up with her twin sister is constantly in demand. Davalos' worldwide identity has continued to grow and her earning capabilities have increased dramatically with her 563,884 Instagram, Twitter, and Facebook followers.

42.     That we know of, Davalos is depicted in the photo in Exhibit "D" to promote Brooklyn on its Facebook page. This Image was intentionally altered to make it appear that Davalos was either an employee working at Brooklyn, that she endorsed Brooklyn, or that she was otherwise associated or affiliated with Brooklyn.

43.     Davalos has never been employed at Brooklyn, has never been hired to endorse Brooklyn, has never been otherwise associated or affiliated with Brooklyn, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

44.     Plaintiff Acosta started her classic ballet studies at the age of four at the Centro de la Cultura in Santiago, Dominican Republic. She later moved on to the ICA, (Instituto de Cultura

- 9 -

y Arte), where she excelled as one of the most gifted students of the academy. After graduating with honors from the ICA and the Ballet School of Norma Garcia with a bachelor's in art with mention to Classic Ballet, she became part of the Dominican Nacional Ballet as the youngest soloist member in 2002. Partaking in all major classic and modern shows in the Dominican Republic, she was nominated twice by the Secretaria de Estado de la Juventud for her work in the category of Cultural Development. She initiated her modeling career in 2004, participating in magazines and television for prestigious Dominican enterprises. Acosta moved to the United States in 2006 where her career took a new turn, distinguishing herself in several areas of the modeling world, featuring in magazines, radio, television programs and commercials and numerous music videos. She has over 38 thousand Facebook followers, over 1.6 million Instagram followers, and over 280.6 thousand Twitter followers.

45.     That we know of, Acosta is depicted in the photos in Exhibit "E" to promote Brooklyn on its Facebook page. This Image was intentionally altered to make it appear that Acosta was either an employee working at Brooklyn, that she endorsed Brooklyn, or that she was otherwise associated or affiliated with Brooklyn.

46.     Acosta has never been employed at Brooklyn, has never been hired to endorse Brooklyn, has never been otherwise associated or affiliated with Brooklyn, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

47.     Plaintiff Rao is originally from Miami, FL but currently resides in Los Angeles and is an influencer/model. She is currently representing Fashion Nova and has previously worked for Shein & PrettyLittleThing. She has appeared alongside Kim Kardashian in a Carolina Lemke glasses advertisement as well as other high profile ad campaigns. She has her own website which

focuses on providing a fitness journey to her clients and promoting physical, mental, and spiritual wellness. Rao has over one million Instagram followers.

48. That we know of, Rao is depicted in the photos in Exhibit "F" to promote Brooklyn on its Facebook page. This Image was intentionally altered to make it appear that Rao was either an employee working at Brooklyn, that she endorsed Brooklyn, or that she was otherwise associated or affiliated with Brooklyn.

49. Rao has never been employed at Brooklyn, has never been hired to endorse Brooklyn, has never been otherwise associated or affiliated with Brooklyn, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

50. Plaintiff Paola Cañas is a Colombian born model now residing and working in the United States. Cañas has been in the industry for over twelve years and has found great success as a model, host, runway model, and actor. Cañas has worked runway shows in her native Colombia, as well as Mexico, Ecuador, United States, and most recently in Paris, France. She is most notable for appearing on the cover of Playboy Mexico in May 2018. She heads up the international campaign and was a contracted model for Curve and their worldwide lingerie line. In Dubai, United Arab Emirates, Cañas was chosen as the face of the Masters Golf Tournament, and was the image for the "International Surf and Sport Expo" in Orlando, FL. She has worked for international brands and labels such as SOHO, KISS underwear, Salon International, Zona Rosa, and Esteban Escobar. She has appeared in numerous TV shows like "FOX Sports" and on TV networks such as Telemundo and TV Azteca. Cañas continues to build an impressive profile and is constantly in demand between Miami, FL, New York, NY, and Los Angeles, CA. Cañas has over 1 million Instagram followers.

51.     That we know of, Cañas is depicted in the photos in Exhibit "G" to promote Brooklyn on its Facebook page. This Image was intentionally altered to make it appear that Cañas was either an employee working at Brooklyn, that she endorsed Brooklyn, or that she was otherwise associated or affiliated with Brooklyn.

52.     Cañas has never been employed at Brooklyn, has never been hired to endorse Brooklyn, has never been otherwise associated or affiliated with Brooklyn, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

53.     Plaintiff Jamillette Gaxiola began her career as a teenager. She was spotted by a modeling agent at a fast-food restaurant, and after some initial resistance, the teenage beauty decided to try modeling. She became Miss Cuba at the age of 18, and quickly became popular among fashion designers and magazines. She is active in a number of social and charitable causes, and one of her personal missions has been to help young women deal with self-esteem issues. In a small period of time, she has possessed the work ethic and dedication to transition between Beauty, Fashion, TV, and is now a Sports Personality representing the UFC. She has worked for designer brands such as Reebok, Hurley, Guess Jeans, Victoria Secret, Nike, MAC Cosmetics, Roberto Cavalli, Naeem Khan, Paul Marciano, Fendi, Saks Fifth Avenue and Niemen Marcus. She is also the current face of UFC. Her beauty pageants consist of Miss Cuba Grand International, and Miss Cuba International. Jamillette's magazine highlights include those of GQ Magazine, Maxim Australia, Open Magazine, and Esquire. She has 210K Instagram followers.

54.     That we know of, Gaxiola is depicted in the photos in Exhibit "H" to promote Brooklyn on its Facebook page. This Image was intentionally altered to make it appear that Gaxiola was either an employee working at Brooklyn, that she endorsed Brooklyn, or that she was

- 12 -

otherwise associated or affiliated with Brooklyn.

55.     Gaxiola has never been employed at Brooklyn, has never been hired to endorse Brooklyn, has never been otherwise associated or affiliated with Brooklyn, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendants' Business Activities and Misappropriation***

56.     Defendants operate Brooklyn, where they engage in the business of selling alcohol and food in a sexually charged atmosphere.

57.     In furtherance of its promotion their promotion of Brooklyn, Defendants own, operate, and control Brooklyn's social media accounts, including its Facebook, Twitter, and Instagram accounts.

58.     Defendants used Brooklyn's Facebook, Twitter, and Instagram accounts to promote Brooklyn, and to attract patrons.

59.     Defendants did this for their own commercial and financial benefit.

60.     Defendants have used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at Brooklyn, endorsed Brooklyn, or was otherwise associated or affiliated with Brooklyn.

61.     Defendants used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed Brooklyn to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

- 13 -

62.     Defendants were well aware that none of the Plaintiffs have ever been affiliated with or employed by Brooklyn, and at no point have any of the Plaintiffs ever endorsed Brooklyn, or otherwise been affiliated or associated with Brooklyn.

63.     All of Defendants' activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs.

64.     Defendants have never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

65.     Plaintiffs have never received any benefit from Defendants' unauthorized use of their Images.

***Standard Business Practices in the Modeling Industry***

66.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

67.     The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

68.     Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

***Defendants' Misappropriation of Plaintiffs' Images***

69.     Defendants were aware that, by using Plaintiffs' Images, they were violating

- 14 -

Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed Brooklyn.

70.     Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

71.     In addition, Plaintiffs allege that any the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with Brooklyn.

72.     At no point was any Plaintiff ever contacted by any Defendant, or any representative of any Defendant, to request the use of any of Plaintiffs' Images.

73.     No Defendants ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

74.     No Defendants ever paid any Plaintiff for its use of her Images on any promotional materials, including Brooklyn's website, Twitter, Facebook, or Instagram accounts.

75.     Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

76.     Defendants' use of Plaintiffs' Images in some cases was also in violation of copyrights and/or licenses held by others, who had lawful relationships with Plaintiffs based on the standard business practices in the modeling industry.

77.     Defendants' breaches of copyrights and/or licenses held by others likewise had the purpose and effect of injuring Plaintiffs in the ways complained of herein, as Plaintiffs were foreseeable victims of harm from Defendants' breaches.

**FIRST CAUSE OF ACTION**
**(Violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B): False Advertising)**

78.     The advertisements at issue in this action were false and misleading under 15

- 15 -

U.S.C. § 1125(a)(1)(B) because no Plaintiff ever worked at or was in any way associated or affiliated with The Club, nor had they agreed to appear in Brooklyn's advertisements.

79.     Given the false and misleading nature of the advertisements, they had the capacity to and did deceive consumers.

80.     Upon information and belief, the deceptive advertisements had a material effect on the purchasing decisions of consumers who attended Brooklyn.

81.     Defendants' publication of these false and misleading advertisements on the internet had the capacity to and did affect interstate commerce.

82.     Even though Defendants were at all times aware that the Plaintiffs neither worked at nor endorsed Brooklyn, Defendants nevertheless used Plaintiffs' Images to mislead potential customers as to Plaintiffs' employment at or affiliation with Brooklyn.

83.     Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship of, employment at, or other relationship with Brooklyn.

84.     Defendants' use of Plaintiffs' Images caused consumer confusion as to Plaintiffs' sponsorship of, employment at, or other relationship with Brooklyn, and the goods and services provided by Brooklyn.

85.     Defendants' unauthorized use of Plaintiffs' Images created a false advertisement prohibited by section 43 of the Lanham Act, and Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

**SECOND CAUSE OF ACTION**
**(Violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A): False Association)**

86.     Defendants' use of Plaintiffs Images created the false impression with the public that Plaintiffs were affiliated, connected, or associated with Brooklyn, or worked at, sponsored, or approved of Brooklyn goods, services, or commercial activities.

- 16 -

87. This was done to promote and attract clientele to Brooklyn, and thereby generate revenue for the Defendants, for Defendants' commercial benefit.

88. Even though Defendants were at all times aware that the Plaintiffs were neither affiliated, connected or associated with Brooklyn, nor worked at, sponsored, or approved of Brooklyn's goods, services or commercial activities, Defendant nevertheless used Plaintiffs Images to mislead potential customers as to Plaintiffs' employment at or affiliation with Brooklyn.

89. Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship, affiliation, connection, association, or employment at Brooklyn.

90. Defendants' use of Plaintiffs' Images caused consumer confusion as to Plaintiffs' employment at or endorsement of Brooklyn and the goods and services provided by Brooklyn.

91. Defendants' unauthorized use of Plaintiffs' Images created a false endorsement prohibited by section 43 of the Lanham Act, and Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

### THIRD CAUSE OF ACTION
### (Common Law Right of Privacy - Misappropriation)

92. Defendants have appropriated each Plaintiffs' likeness for Defendants' commercial purposes without authority or consent from Plaintiffs.

93. Defendant misappropriated Plaintiffs' likenesses by publishing their Images on Brooklyn's website or related social media accounts as part of Defendants' advertising campaign.

94. Brooklyn's website and social media accounts were designed to advertise and attract business to Brooklyn and generate revenue for Defendants.

95. Plaintiffs are informed and believe and hereon allege that the manner in which Defendants posted and publicized their Image and likeness in a manner that was hidden, inherently

- 17 -

undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

96.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiffs' Image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

97.    Plaintiffs' are informed and believe and hereon allege that Defendants' republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

98.    Upon information and belief, Defendants use of Plaintiffs' Images did in fact attract clientele and generate business for Brooklyn.

99.    At no point did any Defendants ever seek or receive permission or consent to use any Plaintiffs' Image for any purpose.

100.   Defendants were at all relevant times aware that they had never received any Plaintiffs' permission or consent to use their Images in any medium for any purpose.

101.   At no point did Defendants ever compensate Plaintiffs for its unauthorized use of their Images.

102.   Defendants' misappropriation of Plaintiffs' Images in some cases was in violation of copyrights and licenses lawfully held by others, and Defendants' lack of respect for those rights was likewise a proximate cause of the harm done to Plaintiffs from Defendants' misappropriation of their Images.

103.   Plaintiffs have been damaged in amounts to be proved at trial.

- 18 -

## FOURTH CAUSE OF ACTION

**(Violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 *et seq.*)**

104.     Defendants operated Brooklyn's website and social media accounts in order to promote Brooklyn, to attract clientele thereto, and to thereby generate revenue for Defendant.

105.     As such, Defendants' operation of the website and social media accounts, and their publication of Images thereon, were in commerce, in that they involved a business activity and the day-to-day activities and affairs of Defendants in North Carolina.

106.     Defendants published Plaintiffs' Images on Brooklyn's website and social media accounts to create the false impression that Plaintiffs were either employees working at Brooklyn, endorsed Brooklyn, or were otherwise affiliated, associated, or connected with Brooklyn.

107.     As such, Defendants' intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with Brooklyn.

108.     Defendants' false advertising, misrepresentations, and breaches of their duties to Plaintiffs and the public were unfair, in that they were immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers in North Carolina.

109.     Defendants' false advertising, misrepresentations, and breaches of their duties to Plaintiffs and the public were deceptive, in that they possessed the tendency or capacity to mislead, or created the likelihood of deception, affecting members of the public in North Carolina and thereby causing injury to Plaintiffs.

110.     Upon information and belief, members of the public relied upon and were in fact deceived by Defendants' false advertising, misrepresentations, and breaches of their duties to Plaintiffs and the public.

111.     Defendants thus engaged in unfair methods of competition in or affecting

- 19 -

commerce, and unfair or deceptive acts or practices in or affecting commerce in the state of North Carolina and caused injury to the Plaintiffs as complained of herein.

112.    Defendants' advertising practices offend the public policy of North Carolina insofar as they constitute misappropriation of Plaintiffs' property rights in their own Images, breaches of copyrights and/or licenses held by others, and invasion of Plaintiffs' privacy, for Defendants' commercial benefit.

113.    Defendants' advertising practices are immoral, unethical, oppressive and unscrupulous insofar as they have sought to confuse the public for their own commercial benefit by implying that Plaintiffs are affiliated, endorse, are associated with and/or are employees at Brooklyn.

114.    Defendants' advertising practices cause substantial injury to consumers and the Plaintiffs by creating the false impression that Plaintiffs are employees at, endorse, or are otherwise affiliated with Brooklyn.

115.    There are no benefits to Defendants' advertising practices as set forth hereon except a benefit to Defendants own commercial interests.

116.    As a result of Defendants' unauthorized and misleading publication of Plaintiffs' Images on its website and social media accounts, each of the Plaintiffs' reputations was injured, and each of the Plaintiffs' ability to market herself as a model was injured.

117.    As a result of Defendants' unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

118.    Plaintiffs are entitled to treble damages pursuant to N.C.G.S. Section 75-1.

119.    Plaintiffs are further entitled to an award of attorney's fees against and taxed to

- 20 -

Defendants pursuant to N.C.G.S. Section 75-16.1.

## FIFTH CAUSE OF ACTION
### (Negligence, Gross Negligence, and *Respondeat Superior*)

120.    Plaintiffs are further informed and believe and hereon allege that Defendants maintain or should have maintained employee policies and procedures which govern the use of intellectual property, copyrights, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the *unauthorized and non-consensual* use of intellectual property, copyrights, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

121.    Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

122.    Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

123.    Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

124.    Defendants breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, copyrights, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

125.    Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these

- 21 -

policies, along with federal and North Carolina law, were not violated. Defendants breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

126. Defendants' breaches were gross and wanton, evidencing a reckless disregard for the rights of Plaintiffs.

127. Defendants' breaches were the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

128. As a result of Defendants' negligence and gross negligence, Plaintiffs have suffered damages and are entitled to recover compensatory and punitive damages from the Defendants in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
**(Conversion)**

129. Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests thereon.

130. By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain.

131. As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
**(Unjust Enrichment)**

132. As set forth in detail above, Defendants published Plaintiffs' Images in order to promote Brooklyn to the general public and potential clientele.

133. Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either employees working at Disco Rodeo or endorsed

- 22 -

Brooklyn.

134. Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

135. Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

136. Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to Brooklyn.

137. Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

138. As such, Plaintiffs have been damaged in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (Quantum Meruit)

139. Plaintiffs are each internationally known models who earn their livings appearing in, *inter alia*, commercials, advertisements, and publications on behalf of companies and brands.

140. Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

141. Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at Brooklyn, endorse Brooklyn, or are otherwise affiliated with Brooklyn, Defendants have not compensated Plaintiffs.

142. Plaintiffs are therefore entitled to reasonable compensation for Brooklyn's unauthorized use of their Images.

- 23 -

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For the Defendants to be adjudged jointly and severally liable to Plaintiffs upon Plaintiffs' first through eighth causes of action;

(b) For an award of actual damages to be paid by Defendants to Plaintiffs, in an amount to be determined at trial, relating to Plaintiffs' first through tenth causes of action;

(c) For an order ***permanently enjoining*** Defendants from using Plaintiffs' Images for any purpose;

(d) For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117, and the North Carolina Unfair and Deceptive Trade Practices Act, § 75-16;

(e) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117

(f) For such other and further relief as the Court may deem just and proper.

Respectfully submitted this 10th day of October, 2024.

/s/ John V. Golaszewski

JOHN V. GOLASZEWSKI
NY Bar No. 4121091
THE CASAS LAW FIRM, P.C.
1740 Broadway, 15th Floor
New York, New York 10019
john@casaslawfirm.com
T: 646.872.3178
F: 855.220.9626
*Attorneys for Plaintiff*
*Pro Hac Vice Application Forthcoming*

/s/ Matthew R. Gambale

MATTHEW R. GAMBALE
N.C. Bar No. 43359
OSBORN GAMBALE BECKLEY & BUDD PLLC
1100 Wake Forest Road, Suite 205
Raleigh, North Carolina 27604
matt@counselcarolina.com
T: 919.373.6422
F: 919.578.3733
*Attorneys for Plaintiff*

- 24 -